BRONSON & CROCKER *vs.* GLEASON.

As a general rule, the store of the merchant, the shop of the mechanic or manufacturer, and the farm or granary of the farmer, at which commodities sold are deposited or kept, is the place of delivery, when the contract is silent as to the place.

But this rule ceases to be applicable when the collateral circumstances indicate a different place.

When the goods are a subject of general commerce, and are purchased in large quantities for reshipment; and the purchaser resides at the place of reshipment, and has, at such place, a storehouse and dock for that purpose; the place of business of the purchaser is ordinarily the place of delivery.

Where a manufacturer of salt at L. executed a writing as follows, " I have this day agreed with B. & C. of Oswego, to sell them one boat load of salt per week and *deliver the same* to them, *in good order*, equal to 400 bbls. each week from this time to the first of November next," &c.; *Held* that upon the reasonable construction of the agreement, in connection with the surrounding circumstances, the salt was to be delivered at Oswego.

APPEAL from a judgment of the recorder's court of the city of Oswego.   The complaint was for the breach of an agreement in writing to deliver to the plaintiffs a quantity of salt at Oswego. The answer of the defendant denied that the agreement set forth had been entered into by the parties, and set up that by the terms of the proposition the defendant was to deliver the salt at Liverpool, that being the place where the salt was manufactured; averring a readiness to perform at Liverpool, and a refusal by the plaintiffs to accept the proposition made by the defendant.  The plaintiffs replied that they accepted the offer of the defendant, and that by the writing the salt was to be delivered at Oswego; averring a readiness on the part of the plaintiffs to perform, and a refusal by the defendant to perform the contract.   The plaintiffs also replied, that by custom or usage the place of delivery was at Oswego; also averring that at the date of the contract, and for one week after, salt at Oswego was not worth more than the sum mentioned in the proposition or offer of the defendant, and was worth much less at the manufactories at Liverpool.

---
Bronson *v.* Gleason.
---

The cause was tried before the recorder without a jury ; trial by jury having been waived by the parties, pursuant to subdivision 3d of section 266 of the code of procedure.   The counsel for the plaintiffs presented and read in evidence the writing, a copy of which was set forth in the complaint in the words and figures following, to wit :

"LIVERPOOL, July 16, 1846.

I have this day agreed with Bronson & Crocker, of Oswego, to sell them one boat load salt per week, and deliver the same to them, in good order, equal to 400 bbls. each week from this time to first November next, at eighty-three cents per bbl. payable as delivered, one-half by their note at 90 days with interest, and one-half cash, or such note as the bank will discount, adding interest, and I agree to hold this offer open one week, and if they write to me within that time, then I am to deliver said salt as above stated.                          L. GLEASON."

The counsel for the plaintiffs then introduced and read in evidence the following letter from the defendants :

"OSWEGO, July 17, 1846.

Mr. L. Gleason, Liverpool—Dear Sir :—Since the return of our Mr. Crocker, we have concluded to accept your proposition made yesterday to sell us 400 barrels salt, delivered to us here each and every week, from that time to first November next, payable as stated in said contract or proposition, at 83 cents per barrel.   You will therefore please send us the salt, say one load per week as therein stated.     Yours respectfully,

BRONSON & CROCKER."

Which said letter, it was admitted by the pleadings, was written by the plaintiffs and sent to the defendant, within one week after the said 16th day of July, 1846.   The counsel for the plaintiffs offered to prove that a large business in the sale and purchase of salt was, in the year 1846, carried on between persons manufacturing salt in Onondaga county, at the places where salt was manufactured, and Oswego, where the plaintiffs reside and transact their business, and that the custom or usage in such transactions, whenever sale was made in Onondaga

VOL. VII.                    60

county, was for the vendor to deliver the salt to the purchasers in Oswego; which testimony was objected to by the counsel for the defendant, the objection sustained by the court, and the plaintiffs' counsel excepted. The counsel for the plaintiffs also offered to prove that on the 16th day of July, 1846, and for one week thereafter, salt delivered in Oswego was not worth any more or a greater price per barrel than 83 cents, the price mentioned in the contract; and was worth a much less sum or price per barrel at the manufactories in Liverpool, which was objected to by the counsel for the defendant, the objection sustained by the court, and the plaintiffs' counsel excepted. The counsel for the plaintiffs then offered to prove what salt was worth per barrel, at Oswego, during the existence of the contract. The defendant's counsel objected to said testimony on the ground that if any contract was shown between the parties, the salt was not to be delivered at Oswego, but at the salt manufactory of the defendant in Liverpool. The court overruled the objection, and the defendant excepted. It was then, for the purpose of saving proofs, admitted by the counsel for the defendant that the difference between the price of salt at Oswego, and the contract price, during the existence of said contract, for the amount to be delivered under the writing bearing date July 16, 1846, was in the aggregate $448. The defendant's counsel also admitted that previous to the said 16th July, 1846, the defendant had sold salt at Oswego, from a canal boat, to the plaintiffs, and rolled the salt from the canal boat on to the dock of the plaintiffs by the defendant and his hands. By the pleadings it was admitted that the defendant, at the date of the writing, was a salt manufacturer, doing business at Liverpool, and the plaintiffs knew it, and that his manufactory was at Liverpool. The counsel for the defendant admitted that no part of the salt mentioned in the contract had been delivered by the defendant to the plaintiffs. Here the plaintiffs rested their cause, and the defendant's counsel moved for a nonsuit on the following grounds: First. That the plaintiffs could not recover because no contract was shown to have existed between the parties, and none was proved. Second. That by the terms of the writing,

Bronson *v.* Gleason.

bearing date July 16, the salt to be delivered was in law to be delivered at the manufactory of the defendant, in Liverpool, and the letter of acceptance was not in the terms of the proposal. Third. That the law fixes the place of delivery at the manufactory of the defendant, and the letter of the plaintiffs making the place of delivery at another place, was not an acceptance. Fourth. That the plaintiffs could not recover without showing a readiness to perform the contract on their part. The motion was denied by the court, and the defendant's counsel duly excepted to the decision. The court then decided that the plaintiffs were entitled to recover against the defendant the sum of $448 ; and the defendant appealed,

*B. B. Burt,* for the plaintiffs.

*G. F. Comstock,* for the defendant.

*By the Court,* GRIDLEY, J. There is no doubt that as a general rule the store of the merchant, the shop of the mechanic or manufacturer, and the farm or granary of the farmer, at which the commodities sold are deposited or kept, is the place of delivery when the contract is silent as to the place. (2 *Kent's Com.* 505.) This rule however ceases to be applicable, when the collateral circumstances indicate a different place. When the goods are a subject of general commerce, and are purchased in large quantities for reshipment ; and the purchaser resides at the place of reshipment, and has at such place a storehouse and dock for that purpose, the place of business of the purchaser is ordinarily the place of delivery.

In the case under consideration we know, from the public laws of the state, the situation of the city of Oswego, of the village of Liverpool, of the Oswego Canal, and that Oswego is a port from which salt is shipped to places beyond the limits of this state. We also know from the pleadings and from an admission on the trial of the cause that the plaintiffs were dealers in the article of salt ; and had, previous to the date of the contract in question, purchased salt of the defendant, which he had trans-

ported in boats, and by himself and hands delivered the same to the plaintiffs, upon their dock at Oswego.

`Aided then by the light of these extrinsic facts, and looking to the amount of salt .agreed to be delivered, and the times provided for such delivery, we think it a reasonable construction of the contract that the delivery should be at Oswego. That the court below had a right to look at these extrinsic facts, and for that purpose would have been justified in receiving some of the evidence which was offered and excluded, is clearly established by adjudged cases. (*See Smith* v. *Doe,* 2 *Brod. & Bing.* 473, 547 *to* 554; 6 *Com. Law,* 243, 247; *Wigram's Extrinsic Ev.* 59 *and* 138, *and* 58, *note b. ;* 1 *Greenl. Ev. p.* 412.) The place of business of dealers in butter, cheese, hops, and other articles destined to a distant or foreign market is the ordinary place of delivery by the vendors. So we think the dock and storehouse of the plaintiffs was the place of delivery for the salt in question. Ch. Kent says that it is well settled in Vermont and New-York that if a note be given for cattle, grain, or other portable articles, and no place of payment be designated in the note, the creditor's place of residence is the place of delivery. (2 *Kent's Com.* 507, *and cases there cited.*) But he says the rule laid down by Ld. Coke is that, if the contract be to deliver specific articles, as wheat or timber, the obligor must seek the obligee before the day and ascertain where he desires the delivery to be made. (2 *Kent,* 506.) He adds, on the next page, however, that if the place intended by the parties can be inferred from collateral circumstances, there is no necessity that the place should be otherwise designated. We think that in this case the recorder had a right to infer, from the surrounding circumstances, and the language of the contract, that the salt was to be delivered at Oswego. The language of the contract is very significant. "I have this day agreed with Bronson & Crocker of Oswego to sell them *one boat load* of salt per week, and *deliver the same* TO THEM, IN GOOD ORDER, equal to 400 barrels each week from this time to the first November next." This certainly indicates the delivery, not of salt enough for the loading of a boat each week ; but of *an actual boat load ;* which

can only be satisfied by a delivery to the plaintiffs by the defendant, of an actual load of salt per week. Again; the words "*in good order*" would seem to imply that it was not the intention of the parties that the salt should be received at the manufactory. This expression would be much more likely to be used in reference to salt that was to be transported, in a boat, by the defendant, to its place of destination, and there delivered "in good order" to the plaintiffs. And this we think is the true construction of the contract.

The judgment must be affirmed.