SMITH and others *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

43 225
87h 545
43 225
2ap290

The owner of goods suing a common carrier to recover damages for an injury happening to the goods through negligence, must give evidence sufficient to show that the goods were in a good condition when they came to the possession of the defendant, as a part of the evidence that they have been injured while in his custody.

Merely showing a delivery of the goods by the carrier, in an injured condition, is not enough. It must be shown in what condition the carrier received them, in order to prove an injury in his hands.

This may be shown by direct affirmative evidence, or by proof of facts and circumstances from which the presumption of fact arises that the goods were in a proper condition when the carrier received them.

Where property is delivered to a rail road company, to be transported by that and another company, over their respective roads, to its place of destination, it is enough for the owner, in an action against the company delivering the property, to recover damages for negligence, to show that he delivered the property to the first company in good order; and the burthen is then cast upon the company delivering the goods thus injured, of proving that they were not injured while in its possession, or that they came to its possession thus injured.

The liability of a rail road company as a carrier of freight is for its own acts, or for injuries which such freight receives while it is in its custody for the purpose of transportation; and not for the acts of other companies which may have previously injured such freight.

The provision of the statute, that "whenever two or more rail roads are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads shall be liable as common carriers, for the safe delivery of such freight at such place," was intended to apply only to the company originally receiving and undertaking to convey and deliver the freight, and not to create any lia-

bility against any other company for an injury sustained by goods while in the possession of the company originally receiving them.

An intermediate carrier, who was not a party to the original undertaking is liable, *it seems,* only as an ordinary carrier, for loss or damage arising while the goods are in his possession as such carrier. *Per* JOHNSON, J.

This gives the owner his election, in case of loss or damage, to bring his action either against the carrier with whom the original undertaking was entered into, or against the particular carrier in whose hands the loss or injury has occurred. *Per* JOHNSON, J.

The latter is clearly liable for his own default, without any aid from the statute.

Where the plaintiff delivered to the Western Rail Road Company, in Massachusetts, whose road connected with that of the New York Central Rail Road Company, at Albany, goods to be transported to M. at Rochester, which goods were received by M., from the latter company, in a damaged condition; *Held,* that without further proof than that of the delivery of the goods in good condition, to the Western Rail Road Company, the court would infer a delivery of the property, in the same condition, by that company, to the New York Central Rail Road Company to be transported by the latter company, as carrier, to Rochester; and that enough was proved to put that company upon its defense, and to authorize a recovery, in the absence of any counter evidence.

THIS is an action brought for the recovery of damages alleged to have occurred to certain merchandise, through the negligence of the defendant as a common carrier, on or about the first day of February, 1857. The property in question, and the claim for damage thereto, was assigned by the vendee, Milliman, to these plaintiffs, before the commencement of this action. The action came on to be tried at the Monroe circuit, in April, 1864, before his honor JAMES C. SMITH, justice, and a jury. The plaintiffs proved that January 29, 1857, Smith, Palmer & Co. delivered to the Western Rail Road Company a case of cigars, directed in substance to R. Milliman, Rochester, New York, to be duly forwarded to him; that in February of that year the defendant delivered the cigars, in bad order, to the vendee, Milliman; that "the Western R. R. and the N. Y. C. R. R. connect together at Albany;" also entries in the defendant's books at Albany, showing, in abreviations, the receipt

of the cigars from the western rail road by the defendant. The plaintiffs offered in evidence the affidavit of A. A. Wemple, general freight agent of the defendants at Albany, explaining said entries, and admitting that there were no entries in the defendant's books at that place, for 1857, showing any damage to said cigars, which was excluded by the court. The plaintiff further proved the measure of damages, viz. $309, at that time, their value in the condition in which they were delivered to the vendee being nothing whatever; the assignment of the bill of said cigars, and the claim for damage thereto, to the plaintiffs. The plaintiffs having rested, the defendant moved for a nonsuit; which motion was granted. A stay of proceedings for sixty days was ordered, to enable the plaintiffs to make a case and exceptions, to be heard at the general term in the first instance.

*F. J. Mather*, for the plaintiffs.

*T. R. Strong*, for the defendant.

*By the Court*, JOHNSON, J. The action was brought against the defendant as a common carrier, to recover damages alleged to have been done to the goods of the plaintiffs' assignee, while in the defendant's possession as such carrier, by carelessness and negligence. The plaintiffs, to maintain the action, proved the delivery of the property in good order to the Western Rail Road Company, in Massachusetts, to be transported to R. Milliman in Rochester, New York; that the rail road of that company connected with the defendant's rail road at Albany; that the goods were delivered to Milliman at Rochester by the defendant's freight agent in a condition so damaged as to be entirely worthless. He also gave in evidence copies of entries in the defendant's books tending, in some degree, to show that the goods were received by the defendant at Albany from the Western Rail Road Company. This evidence was uncontradicted. The plaintiffs

were nonsuited. I am of the opinion that the nonsuit was wrong, and should be set aside. The defendant's counsel insists that there was no evidence to show that the property was in a sound condition when it was received by the defendant. If this is so, the nonsuit was proper. The plaintiffs must of course give evidence sufficient to show that the goods were in good condition when they came to the possession of the carrier, as part of the evidence that they have been injured while in the carrier's custody. Merely showing a delivery by the carrier in an injured condition is not enough. It must be shown in what condition the carrier received them, in order to prove an injury in his hands. This may be shown by direct affirmative evidence, or by proof of facts and circumstances from which the presumption of fact arises, that the goods were in proper condition when the carrier received them. Enough was, I think, proved in this case to raise such presumption. The property was placed in the possession of the Western Rail Road Company in good order and condition, and until the contrary is shown, must be presumed to have continued in that condition while in the possession of that company. It was delivered by the defendant, after being transported over its road from Albany to Rochester, in a damaged condition; and the further presumption necessarily follows, that it received the injury while in the possession of the defendant. The general rule is, that things once proved to have existed in a particular state, are to be presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive. (*Best on Presumptions,* § 136. *Sleeper* v. *Van Middlesworth,* 4 *Denio,* 431. *Walrod* v. *Ball,* 9 *Barb.* 271. *Cooper* v. *Dederick,* 22 *id.* 516.) Unless this rule is to be applied to goods delivered, to be transported over several connecting rail roads, there would be no safety to the owner. It would often be impossible for him to prove at what point or in the hands of which company, the injury happened. But give to such party the benefit of the presumption that the goods he has delivered in good

order in such case, continued so until they came to the possession of the company which delivers them at the place of destination in a damaged condition, and his rights will be completely protected. The burthen is then shifted upon the latter company of proving that such goods came to its possession in a damaged condition, by way of defense. This proof the latter company can always make, much more easily and readily than the converse can be proved by the owner. This is in perfect harmony with a well settled rule of law, as an exception to the general rule. The general rule undoubtedly is, that the burthen of proof is always upon the party who asserts the existence of any fact which infers legal responsibilty. But the exception is equally well established, that in every case the *onus probandi* lies on the party who is interested to support his case by a particular fact which lies more particularly within his knowledge, or of which he must be supposed to be cognizant. If the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. (1 *Greenl. Ev.* § 79. 1 *Stark. Ev.* 362–365. *Wills on Circumstantial Ev.* 183, 184.) This applies in all civil cases. A familiar instance is, the action to recover the penalty for the violation of the exercise law. And it applies also in criminal cases in weighing the evidence, after slight evidence has been given, sufficient to raise the presumption that the allegation is true, in the absence of any evidence to the contrary. In this case, and all cases of like nature, I think it is enough for the owner to show that he delivered the property to the connecting road in good condition, and that the burthen is then cast upon the company delivering the goods injured of proving that they were not injured in their possession, or that they came to their possession thus injured. This evidence in almost every case is all that the owner can possibly give, inasmuch as he is not supposed to accompany his property in the transit. The defendant was unquestionably a common carrier in reference to this

property, and subject to all the liabilities of such carrier to the plaintiffs, though it may have received it from the Western Rail Road Company alone, and upon its undertaking to transport the property to Rochester. The statute (2 *R. S.* 693, § 67, *5th ed.*) expressly makes any rail road company receiving freight for transportation, subject to the same liabilities as common carriers. The liability attaches upon the receipt of the property for the purpose of being transported, and is to the owner of the freight. But this liability is for its own acts, or for injuries which such freight receives while it is in its custody for such purpose, and not for the acts of other companies which may have previously injured such freight. The plaintiffs' counsel seems to insist that, under § 67 of the statute above referred to, the defendant would be liable to the plaintiffs, even though the goods were injured while in the possession of the Western Rail Road Company, and came to the possession of the defendant in the same injured condition in which it was delivered by the defendant at Rochester. But I do not think the statute was intended to create any such liability against any company except the one which first received and undertook to transport the freight. The language is, "whenever two or more rail roads are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads so connected, shall be liable as common carriers for the delivery of such freight at such place." It is obvious, I think, that this was intended to apply only to the company originally receiving and undertaking to convey and deliver the freight. In this respect the statute is only declaratory of the common law obligation of the carrier making the contract. He undertakes for all the carriers intermediate the points of shipment and delivery. (*Burtis* v. *The Buffalo and State Line R. R. Co.* 24 *N. Y. Rep.* 269.) But an intermediate carrier, who was not a party to the original undertaking, would, I apprehend, be liable only as an ordinary carrier, for loss or damage arising

Smith *v.* New York Central R. R. Co.

while the goods were in his possession as such carrier. This gives the owner his election, in case of loss or damage, to bring his action either against the carrier with whom the original undertaking was entered into, or against the particular carrier in whose hands the loss or injury has occurred. There can be no doubt, I suppose, that the latter is clearly liable for his own default, without any aid from the statute.

Courts may take judicial notice of whatever ought to be generally known, within the limits of their jurisdiction. (1 *Greenl. Ev.* § 6.) This would, I think, include notice of the great lines of public travel and transportation of property, and their connection with each other, and the general course of trade and transportation through the country. In a case like this the court would infer, without further proof than was given, a delivery of the property by the Western Rail Road Company to the defendant to be transported by the latter, as carrier, to Rochester. I am clearly of the opinion, therefore, that enough was proved by the plaintiff to put the defendant upon its defense, and to authorize a recovery by the plaintiffs, as no counter evidence was given. If these views are correct, it follows that the nonsuit should be set aside and a new trial granted, with costs to abide the event.

[Monroe General Term, December 5, 1864. *E. Darwin Smith, J. C. Smith* and *Johnson,* Justices.]