## LENAHAN v. PEOPLE.

*Criminal evidence — general notoriety — what facts are not of — judicial notice.*

The statute relating to assault with intent to kill is not limited to assaults by means of deadly weapons, and an indictment charging that the prisoner "with a certain piece of lead, etc., willfully, and feloniously did beat, strike cut, and wound, the same being such means as was likely to produce the death of him," the person assaulted, *held* sufficient.

Upon a trial for assault with intent to kill, where it had been shown that the prisoner was upon the street where the assault took place near the time, which was about nine o'clock in the evening, and the witness testified that the street appeared to be deserted, the court charged the jury that "you have a right of your own knowledge to take notice of the circumstance that at that time, the 5th of August, no part of the city probably was more likely to be deserted, even as early in the night as nine o'clock, than that part of the avenue." *Held* error. In relation to this the jury had no right to regard any thing but the evidence given.

Matters of which the courts take notice, enumerated.

ERROR to the court of general sessions of the city and county of New York, to review the conviction of Thomas Lenahan, for assault with intent to kill. The facts appear in the opinion.

*William F. Howe*, for plaintiff in error.

*Benjamin K. Phelps*, district attorney, for the people.

DAVIS P. J. The plaintiff in error was convicted on the third count of the indictment. It is claimed that the conviction cannot be sustained, because that count contains no averment that the assault was "with a deadly weapon." The count charges that the prisoner feloniously made an assault upon one Horace Galpen, "and him, the said Horace Galpen, with a certain piece of lead which the said Thomas Lenahan, in his right hand, then and there had and held, willfully and feloniously did beat, strike, cut, and wound, the same being such means as was likely to produce the death of him, the said Horace Galpen, with intent him, the said Horace Galpen, then and there feloniously and willfully to kill."

The statute upon which this count of the indictment is drawn is by no means limited to assaults and batteries with intent to kill, etc., by means of any deadly weapon. Its language so far as it bears upon this case, is: "Every person who shall be convicted * * * of any assault and battery upon another, by means of any deadly weapon, or by such other means or force as was likely to produce death, with the intent to kill" shall be punished, etc. 2 R. S. 665, § 36. An assault and battery by means of any deadly weapon with intent to kill is only one of the alternatives of the provision; the other is an assault and battery with like intent by such means and force as was likely to produce death, and that offense is accurately and particularly set forth in the count.

We think there is no merit in the point raised by counsel. A very large number of objections and exceptions were made and taken on the trial, most of which were altogether frivolous. Indeed, if we regard the error book as containing a fair photograph of the proceedings upon the trial, it is painfully apparent that the conduct of the prisoner's counsel in presenting his objections and taking exceptions was so discourteous and indecorous toward the court, as to have deserved severe censure.

We do not regard it important to consider all the exceptions argued before us, because our conclusions upon one of them renders it necessary to reverse the judgment and order a new trial. The crime for which the plaintiff in error is convicted, was committed at about nine o'clock of the evening of the 5th day of August last, at a point on Fifth avenue near Fifty-fourth street. The blow was struck by a person who stealthily approached Mr. Galpen from behind; Mr. Galpen was able to give only a general description of

the person, and to identify the prisoner with him by saying that the person he saw "was about the height and build and general appearance of the prisoner, * * * and had on a dark straw hat of a rather peculiar shape, and also a dark coat." No witness saw the blow struck, but very strong circumstantial evidence was given on the part of the prosecution to show that the prisoner was the guilty person. One of the circumstances was the deserted condition of the avenue at the time, and that nobody but the prisoner was seen near the spot where the occurrence happened.

The prisoner swore in substance that he did not strike the blow; that he had come to Fifty-first street to meet a female according to appointment, and then saw a woman and several men having some difficulty; that upon the outcries of the woman, a police officer came, and that fearing he would be clubbed, he ran up Fifth avenue toward Fifty-fourth street, and while running heard Mr. Galpen's cry of murder, and saw him running across the avenue; that he kept on to the place where Galpen was when struck, and there saw and conversed with the people's witnesses (who had before stated their conversation with him), and that he ran away from that point down Fifty-fourth street, fearing that he might be arrested as one of the persons who had caused the outcries of the woman on Fifty-first street. The prisoner's counsel urged the theory upon the jury that the blow was struck by some person who had been concealed in an area and suddenly sprung out upon Galpen, and then fled or concealed himself as prisoner was approaching from Fifty-first street.

In view of this testimony and theory on the part of the prisoner, it is quite apparent that the condition of Fifth avenue, as to whether it was deserted at the time or whether persons were passing along it in that vicinity, became a question of some materiality; and on this subject the learned judge, in the course of his charge, said: "And here let me remind you that the complainant testified (and that you may consider an important piece of evidence) that when he was walking along, and heard this stealthy step behind him, the street appeared to be deserted; you will recollect the time — it was on the 5th of August; you won't forget the place — it was the Fifth avenue. You have a right of your own knowledge to take notice of the circumstance that at that time, the 5th of August, no part of the city, probably, was more likely to be deserted even as early in the night as nine o'clock, than that part

of the avenue." To the last sentence of this portion of the charge the prisoner's counsel excepted.

We think the exception was well taken. The condition of the street, as to whether deserted or not, at the time and place described, was a fact to be proved like other circumstances in the case, and if the proof on that subject was insufficient or unsatisfactory, the prisoner was entitled to any advantage that might grow out of that fact. The evidence could not be helped out by the jury by taking notice from their own knowledge that as early as nine o'clock of the night of the 5th of August that part of the Fifth avenue was more likely to be deserted than any other part of the city. It is not important whether or not we think that this charge probably had no material influence. There are many things of which courts and juries may take judicial notice without evidence to prove their existence, extent or validity. The general statutes — the rules of the common law — the decisions of the superior courts (*Brown* v. *Scofield*, 8 Barb. 239 ; *People* v. *Herkimer*, 4 Cow. 345) ; the juris-diction and sovereignty exercised *de facto* by their own government (*People* v. *Breese*, 7 Cow. 429 ; *Chapman* v. *Wilbin*, 6 Hill, 475 ; *Bronson* v. *Gleason*, 7 Barb. 472) ; the local divisions of their own country and the relative positions of such divisions ; who are public officers elected or appointed under general statutes (*People* v. *Nevins*, 1 Hill, 154) ; what rivers are public highways (*Browne* v. *Scofield*, 8 Barb. 239) ; the common and ordinary modes of trans-acting commercial business (*Brown* v. *Wiman*, 8 Barb. 239 ; S. C., 8 N. Y. 182); the ordinary duration of human life as a scientific fact (*Johnson* v. *Hudson River R. R. Co.*, 6 Duer, 634) ; the meaning of English words and terms of art ; the ordinary measurement of time into years, seasons, months and days, and other facts of uni-versal experience and acceptance (2 Wait's Law & Pr. 366 *et seq.*) ; but no authority has come within our observation that justifies ju-dicial notice or notice upon the personal knowledge of the court or jury (*Wheeler* v. *Webster*, 1 E. D. Smith, 1 ; *Wilkie* v. *Bolster*, 3 id. 327) of the condition of the streets of New York in any respect at any given time or place. The remark of the learned judge was doubtless a hasty and inadvertent one, but it unfortunately falls, when excepted to, within that class of errors which courts of review are not at liberty to disregard.

The judgment and conviction must be reversed and a new trial ordered.

Lenahan v. People

DANIELS, J.  The prisoner was tried and convicted of the crime of an assault with intent to kill.  The offense was committed about nine o'clock in the evening of the 5th day of August, 1874, on Fifth avenue between Fifty-third and Fifty-fourth streets in the city of New York.  There was no substantial doubt under the evidence, of the commission of the crime by some person; whether the defendant was that person was the real point in the controversy. The evidence given for the purpose of establishing the fact that it was he who committed the crime, was circumstantial in its character ; and it in part consisted of proof that the street at that time was generally deserted at that point, and the prisoner was discovered standing near the place where the crime was committed very near the time of its perpetration.  That the street was actually deserted at that early period of the evening was not conclusively shown, for the complaining witness simply stated that it appeared to be in that condition, that it was very much so for two or three blocks.

Whether he was accurate in his recollection on this subject, was a material circumstance in the case.  For if he was right in that respect, then the circumstance that the prisoner was found in the immediate vicinity of the place where the crime was committed very soon afterward, showed that he probably was so situated that he might have committed it, and if no other persons were about there, afforded reasons for believing that he was the guilty person. This fact was one which directly tended to establish the guilt of the prisoner.  And the more strongly it was fortified the more satisfactory would be the presumption against him, which that circumstance would warrant.

For the manifest purpose of allowing the jury to regard it as an established fact in the case, the court charged the jury that they had a right of their own knowledge to take notice of the circumstance, that at that time, the 5th of August, no part of the city probably was more likely to be deserted, even as early in the night as nine o'clock, than that part of the avenue.

The court evidently saw the importance of this circumstance in its bearing upon the probability of the guilt of the prisoner, and therefore allowed the jury to establish it by their own knowledge, in case the evidence proved unsatisfactory in that respect. What that knowledge might be, neither the prisoner nor his counsel had the means of knowing.  So that upon this portion of the case

he was probably tried upon evidence, the extent and effect of which both were wholly ignorant. The fact referred to was not one which could be regarded as one of general notoriety, and for that reason proof was necessary to establish its existence. And that proof the prisoner was entited to hear and be at liberty to controvert. The rule would be an exceedingly dangerous one, which would leave the jury at liberty to supply defects in the case of the prosecution or defense, from their own observation or their own knowledge, and it has no authority to sustain it. The farthest that the courts have ever gone in that direction has been to take notice of whatever ought to be generally known within the limits of their jurisdiction. 1 Greenl. on Ev. § 6 ; *Smith* v. *N. Y. Cent. R. R. Co.*, 43 Barb. 225, 231 ; *Swinnerton* v. *Columbian Ins. Co.*, 37 N. Y. 174, 189. And whether a certain street in a large city is likely to be deserted at nine o'clock in the evening, is clearly not within that rule.

There may very well have been, and probably were, persons upon the jury that tried the prisoner who never were on that part of Fifth Avenue at nine or near nine o'clock in the evening in the month of August. And yet, if others had been there sufficiently to know the nature of the street at that time, the jury were left at liberty to act upon their knowledge. That would leave the jury to act upon simple unsworn evidence of the existence of a material fact, which would be in direct violation of the well-settled rules of law. If all the jurors had been upon that portion of the avenue and had observed its deserted appearance on other occasions, it would not follow from that fact that it was in that condition on the evening in question. And they would not be justified in concluding that such was the fact at that time from observations of that nature. The conclusion in that state of the case, might or might not be a correct one; and where it is attended with such a state of uncertainty, it should be established by evidence, and not left to be conjectured by the jury. Upon the impropriety of the course pursued in this respect on the trial of the prisoner, nothing further need be added than what was said in the case of *People* v. *Zeiger*, 6 Park. 355.

The prisoner's counsel excepted to what was said upon this subject by the court to the jury. Many other exceptions were taken to the charge not now requiring examination, and also to evidence of an exceedingly questionable nature, to say the least of it. But as that was merely pertinent to the fact of the crime having been

perpetrated, which was conceded through the case, it could not possibly have prejudiced the prisoner, and for that reason would not constitute any proper ground for directing a new trial.

But leaving the jury at liberty to conclude from their own knowledge, that the portion of the avenue where the offense was perpetrated was likely to be deserted at the time when it occurred, and for that reason to place the weight of that circumstance against the prisoner in considering the probability of his guilt, was a manifest error, and for that the judgment should be reversed and a new trial ordered.

*Judgment reversed and new trial ordered.*