### SPRINGER v. WESTCOTT.

(Supreme Court, Appellate Division, First Department. February 6, 1896.)

EXPRESS COMPANIES—LOSS OF CONTENTS OF TRUNK—LIABILITY—EVIDENCE.

In an action against an express company for loss of contents of a trunk, plaintiff having made a prima facie case by evidence that, on taking the train which arrived in New York City at 8 p. m. Saturday, she checked her trunk to that city, and delivered it in good condition to the railroad company; that on the train she delivered the check to defendant's agent, with instructions to deliver the trunk at a certain place; that she heard nothing further from it till the following Tuesday, when it was delivered to her,

soiled, broken, and empty, with defendant's usual express stamp thereon,—it was error to direct a verdict for defendant on his claim that he did not receive the trunk from the railroad company on its arrival, and saw nothing of it till the following Monday evening or Tuesday morning, when it was brought to the railroad company's baggage room by the driver of another express company, in its valueless condition; defendant not having shown when he delivered the check to the railroad company, and the presumption being that he did on Saturday night, and that he then received the trunk in good condition; and no witness having shown of his own knowledge that it was returned by another express company; and the agent of defendant who put the blue mark on the waybills opposite the name of plaintiff, and the description of her property, to show that it was missing, "or not delivered, or something of that kind," on Saturday and the succeeding days, having testified that, so far as he could remember, he made no personal search for it till Monday.

Appeal from circuit court, New York county.

Action by Hannah Springer against Robert E. Westcott, as president of the Westcott Express Company. From a judgment entered on a verdict directed for defendant, plaintiff appeals. Reversed.

For former reports, see 29 N. Y. Supp. 149, and 33 N. Y. Supp. 805.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

B. F. Einstein, for appellant.
Austen G. Fox, for respondent.

BARRETT, J. Upon Saturday, the 14th of September, 1889, the plaintiff took the afternoon train upon the New York Central Railroad from Troy to this city. At the same time she checked her trunk to New York, and delivered it in good order to the railroad company. She arrived here after 8 o'clock on the same evening. In the train, upon her way here, she gave her check to the defendant's agent, with instructions to deliver the trunk at an indicated address, and took the usual receipt therefor. She heard nothing further from the trunk until the following Tuesday, when it was delivered to her, soiled, broken, and empty. It had upon it at this time the defendant's usual yellow label. Upon these facts the plaintiff rested. She thus made out a prima facie case. The defendant properly looked upon it in the same light, for he made no motion to dismiss the complaint. The presumption was that the trunk continued in good condition while it remained in the possession of the railroad company. Smith v. Railroad Co., 43 Barb. 228, 229, affirmed 41 N. Y. 620, and cited with approval; Canfield v. Railroad Co., 75 N. Y. 148. The burden was upon the defendant of showing how he came to deliver the trunk in its damaged and valueless condition. His claim is that he did not receive the trunk from the railroad company upon the arrival of the train; that he saw nothing of it until the following Monday evening or Tuesday morning, when it was brought to the railroad company's baggage room by the driver of another express company; that it was then in its damaged and valueless condition; and that thereupon he delivered it in that condition. The defendant's evidence was by no means conclusive upon these heads. He did not show when he

delivered the check to the railroad company. If he delivered it upon Saturday night, the presumption was that he thereupon obtained possession of the trunk in good order. If he then gave the check to the company, he should at least have shown that, notwithstanding that fact, he did not actually receive the trunk. In that case he should have also shown how he came to give up the check without receiving the trunk; for certainly the defendant must—as he does—admit that when he receives a passenger's check he does not deliver it up to the railroad company without first getting the baggage. Without that admission, the exclusion of the question put to the defendant's messenger tending to prove the latter fact was clearly error. In the absence, therefore, of any evidence as to when the check was delivered to the company, it must be assumed that it was delivered, and the trunk thereupon received, in the ordinary course of business, namely, upon the arrival of the plaintiff's train, upon Saturday evening, or at least upon the arrival of the train following. What transpired upon Monday night or Tuesday morning is also left in doubt. The driver of Dodd's express was not called as a witness, nor was the person who actually received the trunk from him. The defendant's agent, who was examined, left it uncertain whether he testified of his own knowledge or from hearsay. He says that he saw the driver of Dodd's express, and saw the trunk; and that when he first saw the trunk upon Tuesday morning it had the defendant's express stamp on it. Upon the other hand, he said that he was not present when the trunk was received, and that its delivery "was reported" to him. When the trunk was actually received is also in doubt. The agent testified at one time that he saw it on Monday night (the 16th) for the first time. "That," he added, "was the time that the trunk was brought there by Dodd's express." At another time he testified that he was not present when the trunk was received on the morning of the 17th (Tuesday). The fact is, there was no legal evidence that the trunk was stolen, or that it was brought back to the railroad depot by Dodd's express, or by any one.

The defendant also relies upon certain documentary evidence tending to show, as he contends, that the trunk was missing upon the night when it should have arrived, and also upon subsequent days. The evidence consisted of what are called waybills, upon which it was the duty of the defendant's agent to put a blue star opposite the description of any piece of baggage which was missing. This agent placed a blue star opposite the plaintiff's name, and the description of her baggage, upon these waybills. He testified that this meant that the particular piece of baggage was "short." Even in this respect his testimony was not entirely clear, for he also stated that the star "is put there to show there is some trouble in regard to the piece of baggage. It is either short, or not delivered, or something of that kind." But, even if it meant "short," and nothing else, he testified that the blue mark was made without any personal search. He told many confusing stories on this head, claiming that he made a search either upon Saturday

night or Sunday; but after a close cross-examination he in terms retracted all that he had said in that regard, and admitted that, so far as his recollection served him, the first time he made personal search for the trunk was upon Monday morning (the 16th). We do not think that under these circumstances the marks upon the waybills can have the conclusive effect claimed for them by the defendant. They really do not substantially alter the situation. The defendant had the plaintiff's check, and could only secure the trunk upon the surrender of this check to the railroad company. He did secure possession of the trunk, presumably upon the surrender of the check; and it was for him to show when that surrender occurred. He having secured possession of the trunk, as evidenced by its delivery to the plaintiff, the jury could properly have inferred, in the absence of evidence to the contrary, that such possession was secured in the ordinary course of business. It was not for the plaintiff to account for the delay in the delivery of the trunk, nor for the condition in which it was when so delivered. The presumption that its originally good condition continued while it was in the possession of the railroad company was intensified by its exceptionally bad condition when delivered by the defendant. Trunks may be opened and rifled on a baggage car, but they are not readily covered with mud and filth there. The jury might well have found upon all the testimony, under appropriate instructions as to the presumptions, that the trunk was received by the defendant in the regular course of business in the same condition in which it was when checked at Troy, and that after this receipt it was, without apparent reason or evidential explanation, delivered to the plaintiff in its damaged and valueless condition. We cannot conceive upon what principle or view of the evidence the case was withdrawn from the jury. The plaintiff was undoubtedly bound to prove delivery of the trunk to the defendant in its original condition. But she did so prima facie when she proved that, after securing her check for the purpose of obtaining possession of the trunk from the railroad company, such possession was obtained, as evidenced by the delivery to her. As the presumption was that the railroad company delivered the trunk to the defendant in the same condition in which it was when checked, the burden was upon the defendant of rebutting that presumption by competent and satisfactory proof. It would be an extraordinary rule which would require a traveler, after the delivery to him, under such circumstances, of his trunk in a damaged state, to go back over the entire route, and prove that the railroad company had not robbed him, and that the express company had. If there was an outside robbery, surely the burden was upon the defendant to show that that robbery happened prior to his receipt of the trunk. It is impossible to say that the defendant here so clearly established the latter fact, or so conclusively rebutted the presumptions arising from his delivery of the trunk after the receipt of the plaintiff's check, as to warrant the withdrawal of the case from the jury.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.